IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| Central Source LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civil No. 1:18-cv-01316-AJT-MSN |
| Annalcreditreport.co, *et al.*, | ) |
| Defendants. | ) |

**REPORT & RECOMMENDATION**

This matter comes before the Court on plaintiff Central Source LLC's ("plaintiff" or "Central Source") Motion for Default Judgment (Dkt. No. 14).[1] Having reviewed the record and the pleadings, the undersigned Magistrate Judge recommends entering default judgment in plaintiff's favor for the reasons that follow.

**I.   Procedural Background**

On October 19, 2018, plaintiff brought an *in rem* action against the following defendants: annalcreditreport.co; annualcrediitreport.com; annualcreditreport-transunion.com; and wwwwannualcreditreport.com (collectively, "Defendant Domain Names") (Dkt. No. 1). Subsequently, plaintiff filed an Amended Complaint on February 5, 2019 removing defendant

---

[1] On July 3, 2019, plaintiff filed a Motion for Leave to File Second Amended Complaint (Dkt. No. 18) for the sole purpose of adding four additional defendants, which the Court granted on July 8, 2019 (Dkt. No. 21). On July 11, 2019, plaintiff filed a Motion for Order to Publish Notice of Second Amended Complaint (Dkt. No. 24), which the Court granted that same day (Dkt. No. 27). On July 26, 2019, plaintiff filed a declaration stating that those four additional defendants were properly served on July 15, 2019. *See* Meltzer Declr. (Dkt. No. 29) ¶ 5. If appropriate, plaintiff will file a second motion for default judgment as to those four additional defendants.

annualcrediitreport.com and adding defendants annualcreditreporeport.com; annualcreditreportg.com; and getfreeannualcreditreport.com (Dkt. No. 4). [2]

The Amended Complaint alleges two counts against Defendant Domain Names: Count One alleges cybersquatting under the Federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (the "ACPA"); and Count Two alleges trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a) (the "Lanham Act").[3] Amend. Compl. (Dkt. No. 4) ¶ 1. Plaintiff seeks a judgment entered in its favor on Counts One and Two; an order directing Defendant Domain Names be transferred to plaintiff through transfer by the relevant registries and/or registrars of Defendant Domain Names to plaintiff's domain name registrar of choice and by such registrar's change of registrant to plaintiff; an order directing that any other domain names registered by the registrant of Defendant Domain Names that resemble or include plaintiff's trademark be transferred to plaintiff; and an award of reasonable attorney's fees and costs incurred pursuant to 15 U.S.C. § 1117(a), among any other relief as the court may deem just and proper. *Id.* at pg. 14.

On May 13, 2019, plaintiff moved for an entry of default judgment against Defendant Domain Names (Dkt. No. 10), supported by a declaration by Ari S. Meltzer stating that plaintiff effectively served process on Defendant Domain Names and that they failed to answer or otherwise

---

[2] In total, Defendant Domain Names include: annalcreditreport.co; annualcreditreport-transunion.com; wwwwannualcreditreport.com; annualcreditreporeport.com; annualcreditreportg.com; and getfreeannualcreditreport.com.

[3] Plaintiff has previously pursued numerous actions in this court seeking a transfer of similar domain names that infringe on the AnnualCreditReport mark and that were registered in bad faith. *See, e.g.*, *Central Source LLC v. annualcreditreportmonitoring.com, et al.*, No. 1:18-cv-00453-AJT-MSN (E.D. Va. Apr. 19, 2018) (granting plaintiff's motion for default judgment); *see also Central Source LLC v. afreeannualcfreditreport.com, et al.*, No. 1:17-cv-00581-AJT-IDD (E.D. Va. June 8, 2018) (same); *Central Source LLC v. freeannualcfreditreport.com, et al.*, No. 1:17-cv-00063-AJT-TCB (E.D. Va. May 23, 2017) (same); *Central Source LLC v. freeannualcreditreport2014.com, et al.*, No. 1:16-cv-00465-AJT-TCB (E.D. Va. Feb. 24, 2017) (same); *Central Source LLC v. anmnualcreditreport.com, et al.*, No. 1:14-cv-01754 (E.D. Va. Aug. 19, 2015) (same); *Central Source LLC v. annualcrsditreport.com, et al.*, No. 1:14-cv-01755-LO-JFA (E.D. Va. Apr. 23, 2015) (same); *Central Source LLC v. aniualcreditreport.com, et al.*, 1:14-cv-01345-LO-JFA (E.D. Va. Mar. 2, 2015) (same); *Central Source LLC v. aabbualcreditreport.com, et al.*, 1:14-cv-00918-LO-JFA (E.D. Va. Nov. 12, 2014, *amended* Nov. 18, 2014) (same); *Central Source LLC v. annualcreditredport.com, et al.*, 1:14-cv-00302-AJT-JFA (E.D. Va. Aug. 7, 2014) (same); *Central Source LLC v. annualdcreditreport.com, et al.*, No. 1:14-cv-00304-LO-JFA (E.D. Va. Aug. 1, 2014) (same); and *Central Source LLC v. annualcreditreportcom.us, et al.*, 1:14-cv-00305-TSE-JFA (E.D. Va. July 30, 2014) (same).

respond to the Amended Complaint (Dkt. No. 11). The Clerk of Court entered default against Defendant Domain Names on May 14, 2019 (Dkt. No. 12). Pursuant to a Court Order (Dkt. No. 13), plaintiff filed a motion for a default judgment (Dkt. No. 14), along with a memorandum in support (Dkt. No. 15) and a notice of hearing for July 19, 2019 (Dkt. No. 16). The Court reset the hearing on plaintiff's motion to July 26, 2019. On that date, counsel for plaintiff appeared at the hearing on the motion for default judgment before the undersigned Magistrate Judge and no claimant appeared on behalf of Defendant Domain Names (Dkt. No. 28).

**II.    Factual Background**

The following facts are established by plaintiff's Amended Complaint (Dkt. No. 4) as well as its memorandum in support of its motion for default judgment (Dkt. No. 15).

Plaintiff is a corporation organized and existing under Delaware law with a principal place of business in Atlanta, Georgia. Amend. Compl. (Dkt. No. 4) ¶ 5. Based on records in the whois database of domain name registrations, the registrants for Defendant Domain Names are either a privacy service—which replaces a domain name owner's contact information with names such as "Private Registrant," "Registration Private," or "Domain Administrator" to conceal the identity of the true owner of the domain names—or a fictitious person or entity. *Id.* at ¶¶ 6-11. Defendant Domain Names were registered by the same person or entity and are under control of that same person or entity. *Id.* at ¶ 51.

Plaintiff provides consumers with a secure means to request and obtain a free credit report once every twelve months in accordance with the Fair and Accurate Credit Transactions Act, 15 U.S.C. § 1681j. *Id.* at ¶ 18. Plaintiff provides this service through a website and service available at <www.AnnualCreditReport.com>, which is the only site authorized by the United States Federal Trade Commission ("FTC") and the Consumer Financial Bureau ("CFB") to provide such service. *Id.* at ¶ 19. Plaintiff registered the "AnnualCreditReport.com" domain name on June 25, 2004, *id.* at

¶ 20, and further registered over 600 additional related domain names that contain typographical errors of AnnualCreditReport as a defensive measure to limit potential cybersquatting of related domain name registrations, *id.* at ¶ 21.

Plaintiff began promoting the AnnualCreditReport mark in November 2004. *Id.* at ¶ 22. Since opening for public use, AnnualCreditReport has received more than 675,000,000 visits to <www.AnnualCreditReport.com> through July 2017. *Id.* at ¶ 25. The FTC also engaged in a "wide ranging public service campaign" promoting the mark, which resulted in substantial media coverage. *Id.* at ¶ 26. Various federal statutes and regulations also required third parties that advertise or offer a free credit report to identify <www.AnnualCreditReport.com>. *Id.* at ¶¶ 28-31. *See also* 15 U.S.C. § 1681j(g); 12 C.F.R. § 1022.138(b).

Due to promotions and mandatory disclosures, the AnnualCreditReport mark has become famous and/or distinctive throughout the United States and consumers associate the mark with plaintiff's services. *Id.* at ¶ 32. On June 5, 2012, the AnnualCreditReport mark was registered with the U.S. Patent and Trademark Office ("USPTO") under registration number 4152650.[4] *Id.* at ¶ 35; *see also* Compl., Ex. 7 (Dkt. No. 4-7) 2. This registration serves as conclusive evidence of the validity of the mark, plaintiff's ownership of the mark, and plaintiff's exclusive right to use the mark in U.S. commerce. Amend. Compl. (Dkt. No. 22) ¶ 36.

Defendant Domain Names represent typographical errors of the AnnualCreditReport mark, also known as "typosquatting," which "harms consumers by causing confusion with the legitimate sites being sought by the consumers and very often results in consumers' computers being infected with computer viruses, 'bloatware' or other unwanted software, consumer's personal information being collected and misused, and/or consumers being presented with an endless stream of unwanted

---

[4] Due to such consumer recognition, plaintiff also alleges that the AnnualCreditReport mark is entitled to common law trademark rights. Amend. Compl. (Dkt. No. 4) ¶ 34.

4

advertisements." *Id.* at ¶ 3. Accordingly, plaintiff alleges that Defendant Domain Names were registered for the purpose of obtaining internet visitors when such visitors make a typographical error when attempting to reach <www.AnnualCreditReport.com>. *Id.* at ¶ 39. Defendant Domain Names receive compensation for "pay-per-click advertisements"—when consumers click on a link provided by a Defendant Domain Name to a third-party website—and when consumers are automatically redirected to third-party websites for sale solicitations. *Id.* at ¶¶ 41-42.

Accordingly, plaintiff contends that Defendant Domain Names were registered with the intent to divert consumers away from plaintiff's online location at <www.AnnualCreditReport.com> for commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of Defendant Domain Names and the sites displayed through the use of Defendant Domain Names, *id.* at ¶ 47, which use does not comply with the mandatory disclosure provisions set forth in 15 U.S.C. § 1681j(g) and 12 C.F.R. § 1022.138, *id.* at ¶ 48. Due to Defendant Domain Names' actions, plaintiff alleges that it suffers great and irreparable harm to the value and goodwill associated with the AnnualCreditReport mark. *Id.* at ¶¶ 58, 70.

### III. Jurisdiction, Venue, and Service of Process

A court must have both subject matter and personal or *in rem* jurisdiction over a defaulting defendant before it can render a default judgment. The court has original subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) because this action arises under federal law, the ACPA and the Lanham Act. There is *in rem* jurisdiction over Defendant Domain Names pursuant to 15 U.S.C. § 1225(d)(2)(A) because Defendant Domain Names have violated plaintiff's trademark, *id.* at § 1225(d)(2)(A)(i), and plaintiff cannot obtain personal jurisdiction of Defendant Domain Names because their listed registrant is "either a privacy service or a fictitious person/entity," *id.* at § 1225(d)(2)(A)(ii)(I). Venue is likewise proper pursuant to 15 U.S.C.

§ 1125(d)(2)(C) because the registry for Defendant Domain Names, VeriSign, Inc. ("VeriSign"), is located within this court's judicial district.[5]

> The ACPA provides that for *in rem* actions, service of process must be made by:
>
> (aa) sending a notice of the alleged violation and intent to proceed under this paragraph to the registrant of the domain name at the postal and e-mail address provided by the registrant to the registrar; and
>
> (bb) publishing notice of the action as the court may direct promptly after filing the action.

15 U.S.C. § 1125(d)(2)(A)(ii)(II)(aa)-(bb). Plaintiff has complied with subsection (aa) by providing the current registrant of Defendant Domain Names with notice of plaintiff's intent to proceed *in rem* and including a copy of the Amended Complaint. Pl. Mem. In Support of Mtn. Publication, Ex. A (Dkt. No. 6-1) ¶ 6. The notice was sent to the postal and email addresses set forth in the registration for Defendant Domain Names. *Id.* Plaintiff further complied with subsection (bb) by filing a Motion for Order to Publish Notice of Action (Dkt. No. 5) on February 8, 2019, which the Court granted that same day requiring plaintiff to publish the Order in *The Washington Times* or *The Washington Post* within fourteen (14) days after entry of the Order and to file a declaration within twenty (20) days after entry of the Order describing the steps plaintiff took to comply with the Order (Dkt. No. 8). Accordingly, on February 13, 2019, plaintiff published a copy of the Court's Order in *The Washington Times* advising Defendant Domain Names of the instant action and subsequently filed a declaration describing plaintiff's compliance with the Court's Order. *See* Meltzer Declr. (Dkt. No. 9) ¶¶ 4-5. Because Defendant Domain Names failed to file an answer or respond within twenty-one (21) days from the date of publication in *The Washington Times*, the Clerk entered the default of Defendant Domain Names (Dkt. No. 12).

---

[5] At the July 26, 2019 hearing on plaintiff's motion for default judgment, plaintiff's counsel stated that the registry for annalcreditreport.co is Neustar, not VeriSign.

## IV. Standard

Default judgment is appropriate if the well-pleaded allegations of the complaint establish that the plaintiff is entitled to relief, and the defendant has failed to plead or defend within the time frame set out in the rules. Fed. R. Civ. P. 55; *see also Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 662 (E.D. Va. 2006). By defaulting, the defendant admits the plaintiff's well-pleaded allegations of fact, which then provide the basis for judgment. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006). Nevertheless, "'[a] court confronted with a motion for default judgment is required to exercise sound judicial discretion in determining whether the judgment should be entered, and the moving party is not entitled to default judgment as a matter of right.'" *ReadyCap Lending, LLC v. Servicemaster Prof'l Cleaning, Inc.*, 2016 WL 1714877, at *2 (E.D. Va. Apr. 12, 2016) (quoting *EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009)). Here, because Defendant Domain Names have not answered or otherwise timely responded, the well-pleaded allegations of fact contained in the Amended Complaint are deemed to be admitted.

## V. Analysis

Having examined the record, the undersigned finds that the well-pleaded allegations of fact in the Amended Complaint (Dkt. No. 4), supported by plaintiff's Motion for Default Judgment (Dkt. No. 14) and Memorandum of Points and Authorities in Support of Plaintiff's Motion for Default Judgment (Dkt. No. 15), establish that Defendant Domain Names violated the ACPA. Given plaintiff's request, the undersigned further finds that Count Two should be dismissed without prejudice.[6]

---

[6] In plaintiff's memorandum in support of its motion for default judgment, it requested "that the Court dismiss the Second Count of In Rem Trademark Infringement [under the Lanham Act] without prejudice given that the only relief being sought may be ordered pursuant to the First Count of In Rem Cybersquatting." Pl. Br. (Dkt. No. 15) 1 n. 1.

The ACPA provides that a person is liable to a trademark owner if that person (1) registers, traffics in, or uses a domain name that is identical or confusingly similar to a distinctive or famous mark or is a trademark and (2) has a bad faith intent to profit from that mark. *See* 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *see also People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001). The Second Amended Complaint pleads both that Defendant Domain Names are confusingly similar to plaintiff's distinctive AnnualCreditReport mark and that the registration and use of the domain names was in bad faith. Accordingly, plaintiff is entitled to the relief requested in its motion for default judgment.

### a. Distinctiveness of the AnnualCreditReport Mark

First, the undersigned finds that Defendant Domain Names are confusingly similar to the AnnualCreditReport mark. At the outset, plaintiff's registration of the AnnualCreditReport mark on the Principal Trademark Register of the USPTO is *prima facie* evidence that the mark is at least descriptive and distinctive. *See, e.g.*, *Am. Online, Inc. v. AT&T Corp.*, 243 F.3d 812, 816 (4th Cir. 2001) ("With a certificate of registration . . . the registrant obtains prima facie evidence that its mark is not generic in the eyes of the relevant public and that its mark is not 'merely' descriptive, but at a minimum is descriptive *and* has obtained secondary meaning.") (internal citations omitted) (emphasis in original).

Courts have further found secondary meaning associated with a trademark where there is extensive advertising expenditures, sale successes, attempts to plagiarize a mark, and when the mark has been used exclusively for an extended period of time, among other factors. *See, e.g.*, *Perini Corp. v. Perini Constr. Inc.*, 915 F.2d 121, 125 (4th Cir. 1990) (quoting *Thompson Medical Co. v. Pfizer Inc.*, 753 F.2d 208, 213 (2d Cir. 1985)). In the instant action, plaintiff has established that the AnnualCreditReport mark has generated a secondary meaning. Plaintiff alleges that it has used the AnnualCreditReport mark for over fourteen (14) years in connection with its services.

Amend. Compl. (Dkt. No. 4) ¶¶ 20-21. In addition to the longevity of plaintiff's use of the AnnualCreditReport mark, plaintiff also alleges that it, as well as other agencies, has engaged in extensive advertising to promote the mark, which generated substantial media coverage. *Id.* at ¶¶ 22, 25-26, 32. Due to such promotion, the mark has received more than 675,000,000 visits to <www.AnnualCreditReport.com> through July 2017. *Id.* at ¶ 25. Additionally, plaintiff has successfully brought various lawsuits against domain names similar to Defendant Domain Names seeking transfer of those domain names that infringe on the AnnualCreditReport mark and were registered in bad faith. *Id.* at ¶ 4.

Accordingly, the undersigned finds that the AnnualCreditReport mark is distinctive, consistent with this court's prior rulings that have recognized the validity and distinctiveness of the AnnualCreditReport mark. *See, e.g.*, *Central Source LLC v. annualdcreditreport.com*, No. 1:14-cv-3-4, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (finding "that the AnnualCreditReport mark is at least distinctive").

### b. Defendant Domain Names are Confusingly Similar to the AnnualCreditReport Mark

Second, the undersigned must consider whether Defendant Domain Names are identical or confusingly similar to the AnnualCreditReport mark. "In assessing whether a mark is confusingly similar, the allegedly infringing domain name does not need to be identical to the registered mark. Rather, the 'dominant or salient portions' of the domain name must be sufficiently similar." *Volvo Trademark Holding AB v. Volvospares.com*, 703 F. Supp. 2d 563, 568 (E.D. Va. 2010) (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir.1995)); *see, e.g.*, *Agri-Supply Co.*, 457 F. Supp. 2d at 664 (finding that defendant's domain name "Agrisupply.com" was "confusingly similar" to plaintiff's trademark "Agri-Supply," including the domain name "Agri-Suppy.com").

Each of Defendant Domain Names includes a misspelling of the AnnualCreditReport mark. This court has held that "[t]he misspelling of the AnnualCreditReport mark constitutes a clear attempt at typosquatting of the AnnualCreditReport mark insofar as omitting or inserting a letter or letters from the word 'AnnualCreditReport,' altering the order of the letters in the word 'AnnualCreditReport,' or substituting a different letter in the word 'AnnualCreditReport' takes advantage of common errors made in typing by consumers when attempting to reach <annualcreditreport.com>." *Central Source LLC*, 2014 WL 3811162, at *7. The same holds true in this action. Based on a simple comparison of Defendant Domain Names and the AnnualCreditReport mark, the dominant portions of such domain names are simply variations of the AnnualCreditReport mark, nothing more. Clearly, Defendant Domain Names use of typographical errors of the AnnualCreditReport mark demonstrates that they sought to capitalize on consumer confusion between the domain names and the mark to generate their own capital gains.

Accordingly, the undersigned finds that Defendant Domain Names are confusingly similar to the AnnualCreditReport mark.

### c. Bad Faith

Having found that AnnualCreditReport mark is distinctive and that Defendant Domain Names are confusingly similar to the mark, the last consideration is whether Defendant Domain Names were registered or used in bad faith with the intent to profit. The ACPA lists several factors that a court may consider in determining bad faith, but does not need to be exhaustively considered. *See Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005). These factors include:

(I) a defendant's intellectual property rights in the domain name;

(II) the extent to which the name consists of defendant's legal name;

(III) a defendant's prior use of the domain name in connection with the bona fide offering of any goods or services;

(IV) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) a defendant's intent to divert consumers from the mark owner's website in such a way that could harm the goodwill of the mark;

(VI) a defendant's offer to transfer, sell, or otherwise assign the domain name to the plaintiff or any third party for financial gain without having used, or the intent to use, the domain name in the bona fide offering of any goods or services;

(VII) a defendant's provision of misleading or false contact information when applying for registration of the domain name;

(VIII) a defendant's registration or acquisition of multiple domain names which it knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names without regard to the goods or services of the parties; and

(IX) to the extent to which the mark incorporating in a defendant's domain name registration is or is not distinctive.

*See* 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX). In relevant part, the undersigned finds that Defendant Domain Names do not have intellectual property rights in the domain names, *id.* at § 1125(d)(1)(B)(i)(I); they have not engaged bona fide noncommercial or fair use of the mark or a bona fide offering of any goods or services, *id.* at § 1125(d)(1)(B)(i)(III)-(IV); they are using the domain names to divert consumers away from plaintiff's website for commercial gain that has resulted in harm to the AnnualCreditReport mark, *id.* at § 1125(d)(1)(B)(i)(V); they have supplied false contact information when registering the domain names, *id.* at § 1225(d)(1)(B)(i)(VII); they sought to have the domain names be confusingly similar to the AnnualCreditReport mark, *id.* at § 1225(d)(1)(B)(i)(VIII); and the AnnualCreditReport mark is distinctive, *id.* at § 1225(d)(1)(B)(i)(IX).

Accordingly, plaintiff's Amended Complaint pleads sufficient facts to show that plaintiff possess trademark rights in Defendant Domain Names, that Defendant Domain Names are confusingly similar to the AnnualCreditReport mark, and that Defendant Domain Names had bad

faith intent to profit from using the domain names. *See* 15 U.S.C. § 1125(d)(1)(A)(i)-(ii); *Doughney*, 263 F.3d at 367. Therefore, the undersigned finds that plaintiff is entitled to relief under the ACPA.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends:

1) Granting Plaintiff's Motion for Default Judgment (Dkt. No. 14);

2) Directing that VeriSign and Neustar change the registrar of record for each Defendant Domain Name to GoDaddy.com; and

3) Dismissing Count Two of the Amended Complaint because plaintiff's relief may be granted exclusively under the ACPA.

## VII. Notice

By means of the Court's electronic filing system and by mailing a copy of this Report and Recommendation to Defendant Domain Names at their address for service of process, the parties are notified as follows. Objections to this Report and Recommendation must be filed within fourteen (14) days of service on you of this Report and Recommendation. Failure to file timely objections to this Report and Recommendation waives appellate review of the substance of this Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

/s/
Michael S. Nachmanoff
United States Magistrate Judge

August 5, 2019
Alexandria, Virginia